**PENN INTERNATIONAL INDUSTRIES, INCORPORATED, Plaintiff-Appellant/Cross Appellee,**

v.

**NEW WORLD MANUFACTURING, INC., Defendants-Appellees/Cross Appellants.**

**Nos. 81–4366, 81–4370.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 14, 1982.

Decided Nov. 9, 1982.

---

Glen R. Grunewald, Warren, Chickering & Grunewald, Oakland, Cal., for plaintiff-appellant/cross-appellee.

Thomas O. Herbert, Flehr, Hohbach, Test, Albritton & Herbert, San Francisco, Cal., for defendants-appellees/cross-appellants.

Before WISDOM*, SNEED and FARRIS, Circuit Judges.

WISDOM, Circuit Judge:

This case involves a patent infringement action brought by Penn International Industries, Inc. ["Penn"] against New World Manufacturing, Inc., and its principals, Jerry and Rebecca Moore ["New World"]. On appeal, Penn challenges the district court's holding that its patent for an air frame waterbed is invalid because the subject matter was obvious under 35 U.S.C. § 103. On cross-appeal, New World alleges that the district court abused its discretion in denying attorneys' fees to it. We affirm the district court on both issues.

I.

The patent in issue, U.S. Patent 3,778,852 ["Penn patent"], is for a waterbed made up of an inner chamber of water framed by an outer chamber of air. The waterbed consists of a seamless top sheet, a seamless bottom sheet, a continuous outer side wall, and a continuous inner wall, both slightly curved at the corners, all made of polyvinyl chloride. The inner wall is formed by an inner sheeting sealed to the top and bottom sheets at a point inward from their edges. This inner wall and the top and bottom sheets form the inner chamber. The top and bottom sheets, however, extend beyond this inner wall to the outer wall and are sealed to the outer wall to form the outer chamber. The inner chamber is filled with water through a valve and forms the mattress. The outer chamber is filled with air through a second valve at a pressure sufficient to frame the liquid by depressing the

---

* The Honorable John Minor Wisdom, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

inner wall against it. This design eliminates the need for a rigid (usually wooden) frame to encase the water and makes the waterbed easier to transport than one with a rigid frame. The air frame is also more comfortable for sitting and for easing into and out of bed. Penn alleges two other less obvious advantages of this design. First, enclosing the seams of the water mattress in the air chamber allows leaks along the seam to flow into the air chamber and not onto the floor. Second, the inner wall is convex to the water. Consequently, any sudden surges in water pressure can deform the inner wall so that it is concave, rather than deforming the sleeping surface by causing waves on it.[1]

The Penn patent has been the subject of other litigation. In 1974, Penn sued Pennington for infringement, and Pennington raised invalidity as a defense. The district court found for Penn. On appeal, this Court remanded the case because the district court failed to consider the obviousness of the patent in light of "The Suntanner"— an unpatented waterbed that the Patent Office had not considered during the application process.[2] After further findings of fact, the district court again rendered judgment for Penn. In a second case, American Thermo Seal, Inc. sued Penn for a declaratory judgment that the patent was invalid. The district court held the Penn patent invalid on summary judgment in view of the prior art.

These two cases were consolidated on appeal. In the *Pennington* case, this Court held the findings that the patent was not obvious were supported by the record and not clearly erroneous. *Penn International Industries v. Pennington Corp.,* 583 F.2d 1078, 1082 (9th Cir. 1978). The Court remanded *American Thermo Seal* for further factual findings concerning the prior art. The Court noted that its conclusion of validity in the lawsuit against Pennington should not affect the district court on remand because the two suits were distinct challenges to the patent.

Penn filed a patent infringement action against New World in 1978. Penn alleged that New World made waterbeds using Penn's invention without any license. New World answered that the patent was invalid and was obvious based on prior art.[3] At trial, New World introduced a number of prior patents and the Suntanner to support its defense of obviousness. New World also introduced evidence of the Crowley bed, an air frame waterbed which was never manufactured or sold. The district court held that this evidence established the invalidity of the patent either as a mere combination of old elements or as an obvious combination. The court also rejected New World's argument that this was an exceptional case calling for the award of attorneys' fees to New World pursuant to 35 U.S.C. § 285.[4]

On appeal, Penn contends that the district court erred in holding that the pre-

---

1. New World introduced evidence showing that this advantage of the Penn patent did not exist.

2. The court stated:
 On the question of the patent's validity, we hold that the Suntanner was relevant prior art and that since it was not taken into consideration by the Patent Office, the presumption of the patent's validity is dissipated. We hold further that the Suntanner was the most pertinent prior art, being the only air-frame waterbed in the prior art, and that in appraising the advance of the Penn patent over prior art, the advance over the Suntanner must be ascertained and appraised.
 *Penn International Industries v. The Pennington Corp.,* 551 F.2d 313 (9 Cir.1976) (unpublished memorandum), *quoted in Penn International Industries v. The Pennington Corp.,* 583 F.2d 1078 (9th Cir.1978).

3. One condition for patentability, of course, is that the subject matter be non-obvious. Section 103 of title 35 states:
 A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

4. Section 285 provides, "The court in exceptional cases may award reasonable attorney fees to the prevailing party."

sumption of validity for its patent under 35 U.S.C. § 282 was dissipated, shifting the burden of proof to Penn; that New World failed to sustain its burden of proof with respect to obviousness; and that the district court erred in considering the Crowley waterbed as prior art or as evidence of obviousness. On cross-appeal, New World contends that Penn's unconscionable conduct during the litigation makes this an exceptional case warranting the award of attorneys' fees.

## II.

 Under 35 U.S.C. § 282, the validity of a patent is presumed, and the party asserting its invalidity must establish invalidity.[5] This Court has held this presumption is overcome only by clear and convincing evidence. *See Speed Shore Corp. v. Denda,* 605 F.2d 469, 471 (9th Cir.1979); *Santa Fe Pomeroy, Inc. v. P & Z Co., Inc.,* 569 F.2d 1084, 1091 (9th Cir.1978). The presumption, however, is dissipated if the Patent Office examiner did not have the prior art before him in making his determination.[6] In that case, the burden of proof with respect to non-obviousness shifts to the claimant under the patent. *See Tveter v. AB Turn-O-Matic,* 633 F.2d 831, 833 (9th Cir.1980).

New World contends that the presumption of validity was dissipated by the evidence establishing that the Patent Office examiner had not considered significant relevant prior art. For example, New World points out that the examiner never considered the Suntanner, a relevant British patent, or the Crowley waterbed. Penn argues that the presumption was resurrected in *Pennington* because this Court did consider the Suntanner in that case and found the patent valid in view of that art.[7] Penn asserts that this Court's opinion in *Pennington* is stare decisis in this action against New World. Penn points out that the district court's sole ground for finding the presumption dissipated was that the examiner failed to consider the Suntanner, which this Court did consider in *Pennington.*[8]

 We hold that Penn has the burden of proof. The presumption of validity for the Penn patent was dissipated in the first *Pennington* case due to the additional evidence of prior art challenging the patent. Any "stare decisis" effect of the *Pennington* decision was dissipated due to the additional evidence of prior art presented by New World to the district court.[9] The basis

---

**5.** Section 282 states: "A patent shall be presumed valid. . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."

**6.** The basis for the presumption is that the Patent Office has compared the claim of the patent with the prior art and made a determination of validity. *See Tveter v. AB Turn-O-Matic,* 633 F.2d 831, 833 (9th Cir.1980); *Sidewinder Marine, Inc. v. Starbuck Kustom Boats and Products, Inc.,* 597 F.2d 201, 206 (10th Cir.1979). This presumption also rests on the expertise of the Patent Office. *See Speed Shore Corp. v. Denda,* 605 F.2d 469, 471 (9th Cir.1979); *Sidewinder Marine,* 597 F.2d at 206. When prior art is not before the Patent Office examiner, the basis for the presumption no longer exists.

**7.** Penn asserts that the *Pennington* Court considered all of the relevant prior art with respect to the Penn patent. Penn contends that the British patent was identical with an American patent, the Post patent, that was considered by the Patent Office examiner and was before the *Pennington* court. Penn argues that there was

insufficient proof to show the Crowley waterbed ever existed.

**8.** Penn concedes that the only authority with respect to resurrecting a presumption of validity is *Hammerquist v. Clarke's Sheet Metal, Inc.,* 658 F.2d 1319 (9th Cir.1981). We find that case unpersuasive. The jury in *Hammerquist* returned a general verdict that the patented development was not obvious. On review, this Court took that verdict to mean that the jury found the additional evidence of prior art not before the Patent Office examiner to be cumulative of the prior art that was before the examiner. *See* 658 F.2d at 1323. Therefore, the presumption was not dissipated. The question in that case was not whether the presumption was reinstated, but whether it was ever dissipated in the first instance. *Hammerquist* tells us nothing about whether the favorable judgment in *Pennington* reinstates a dissipated presumption.

**9.** We realize that the district court stated that the presumption remained dissipated because the Patent Office examiner failed to examine the Suntanner and that the validity of the Penn

for the presumption—that the Patent Office has compared the claim of the patent with the prior art and used its expertise to determine validity—can no longer exist when substantial evidence of prior art not considered by the Patent Office is placed in evidence at trial.[10] There being no presumption of validity, we hold that the burden of proof shifted to Penn to prove its patent valid.

### III.

■ Our next inquiry is to determine if the district court was correct in finding the Penn patent invalid by reason of obviousness in view of the prior art.[11] Under 35 U.S.C. § 103, a patent cannot be issued if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious to one ordinarily skilled in the art. Obviousness is a question of law, but the conclusion of law depends on factual inquiries. *See Tveter*, 633 F.2d at 834; *Speed Shore Corp.*, 605 F.2d at 471 & n. 4. The trial court must consider the scope and content of the prior art, the differences between the prior art and the claims of the challenged patent, and the level of ordinary skill in the art. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545, 556 (1966). A development is patentable if it adds something more to the art than the "adjustments, alterations, and improvements that would be expected to result from the exercise of the skill and ingenuity of a mechanic

charged with knowledge of all that is disclosed in prior art." *Tveter*, 633 F.2d at 834.

■ We hold that the Penn patent is an obvious combination of elements existing in the prior art that had no synergistic effect from the combination of the known elements. The most significant of the prior patents, Post Patent, No. 2919747, and British Patent, No. 412245, can be combined with the Suntanner to render the Penn patent invalid for obviousness. The Post patent is a structure of air mattresses, cushions, and pillows. It consists of flexible top and bottom sheets and two endless interior walls also of flexible material impermeable to air, forming three concentric chambers. The Post patent stated that, instead of using perforations in the wall, one could use a second valve to inflate the second chamber. Also, Post stated that one could use perforations in both interior walls, resulting in a completely collapsible structure. If the inner chamber is filled with water, the Post mattress would perform the damping function to the same extent as would the Penn bed. In fact, the tests revealing that the water-filled model of the Post structure did not damp waves also revealed the Penn bed did not damp waves.

The British patent is for a pneumatic cushion. It consists of top and bottom sheets with separate, isolated chambers in the interior. The isolation of the chambers is critical because the designer desired to produce a varying degree of hardness in the

---

patent in view of the Suntanner was decided in *Pennington*. The district court erred when it cited the failure to consider the Suntanner as the sole basis for dissipation of the presumption. The error, however, is harmless because the district court went on to consider additional evidence on obviousness that unquestionably was not before the Patent Office or the *Pennington* Court—the British patent and the Crowley waterbed. We do not find the British patent to be identical with the Post patent as Penn contends. We also find the evidence of the Crowley waterbed to have been properly admitted. See § IV, infra.

10. The uniqueness of each challenge to a patent was recognized in *Pennington*. In remanding the *American Thermo Seal* case, this Court

stated that its finding of validity in no way controlled the district court on remand: "The cases present distinct challenges to the patent, prosecuted by different parties, and based on different evidence. The doctrines of subject and issue preclusion are inapplicable." *Pennington*, 583 F.2d at 1083. Our holding recognizes that New World's challenge to the patent presents far different evidence from previous challenges and cannot be bound by earlier results where the evidence of prior art was less extensive.

11. We are considering only Claim 1 of the Penn patent on appeal. Penn has conceded that if Claim 1 is not patentable, the remaining claims are not patentable either.

different sections of a single cushion. This is achieved by filling the isolated chambers with a different amount of pressure in each chamber.[12]

The idea of using water as a mattress-filling was well known. The Suntanner added the idea of an air frame around a water mattress for a comfortable sitting surface. The British patent presented the idea of using different pressures in chambers to create different levels of hardness in a single cushion and showed how to prevent leaks between chambers. The Suntanner and Post patent together contain all the elements of Penn's so-called novel seaming arrangement. Tests of the Post and Penn patents showed that the damping function claimed to exist in the Penn waterbed did not exist. This evidence, along with other evidence of prior art considered in the district court, establishes that the Penn patent was subject matter that would have been obvious to one ordinarily skilled in the art. We affirm the holding that the Penn patent was invalid based on obviousness.

### IV.

 Penn also contends that the district court improperly relied on the Crowley bed—an unpatented waterbed that was identical with the Penn patent, but never marketed—as evidence of obviousness or of complete anticipation of the Penn patent. Penn argues that the deposition of Crowley introduced in evidence was insufficient to establish that the Crowley waterbed ever existed.[13] The standard set forth in *Washburn & Moen Manufacturing Co. v. Beat 'Em All Barbed Wire Corp.*, 143 U.S. 275, 283–284, 12 S.Ct. 443, 446–447, 36 L.Ed. 154, 158–59 (1892), requires that oral testimony of unpatented devices introduced at

12. We reject Penn's argument that the Post and British patent are identical and that as a result the *Pennington* court had considered all of the prior art relevant to the Penn patent. The British patent required isolation of the chambers and no leakage between chambers; the Post patent required neither.

13. The deposition of Crowley took place in the litigation between Penn and American Thermo Seal in 1979. The parties agreed that the depo-

trial be accompanied by proof of their existence that is clear, satisfactory, and beyond a reasonable doubt. The Crowley deposition fails to meet this standard, but Penn agreed that the deposition could be used as evidence and did not object to its admission on the ground that a proper foundation was not laid proving the existence of Crowley waterbed. We hold that Penn waived whatever objection it had to this evidence by allowing its introduction at trial and not raising any evidentiary objection to it.

### V.

 New World contends that the district court erred in not considering this case an extraordinary one justifying an award of attorneys' fees under 35 U.S.C. § 285; that Penn should have recognized that the waterbed was obvious; and that to litigate this suit was simply to harass New World. We do not consider this to be an extraordinary case. In awarding fees under 35 U.S.C. § 285, courts have required "such misconduct upon the part of the losing party as to constitute fraud upon the Patent Office or so unfair and reckless as to make it unconscionable for the prevailing party to sustain the expense of counsel." *Q-Panel Company v. Newfield*, 482 F.2d 210, 211 (10 Cir.1973). See *Arbrook, Inc. v. American Hospital Supply Corp.*, 645 F.2d 273, 278–79 (5th Cir.1981), holding that § 185 was meant to prevent gross injustice, and an award of fees requires an unambiguous showing of extraordinary misconduct. This case involves no extraordinary misconduct, and in fact there has been no showing that Penn has not pursued this litigation in good faith. Nor has Penn made any material misrepresentation to the Patent Office. We hold that the district court did not abuse its discretion in denying the award of attorneys' fees to New World.

sition would be used as evidence in this case. Crowley testified that his business, which manufactured the Suntanner, tried approximately 50 waterbed designs in 1970 in an attempt to prevent leakage. The prototypes were sold as scrap, and the business kept no records of the designs. Crowley drew a sketch of one design from memory for Pennington's attorney; it was identical with the Penn bed.

We AFFIRM the decision of the district court in this case.